Philip L. Stimac
395 Greenstone Drive
Reno, NV 89512
PH. 775 742 4961

In Pro Se

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

OCT 3 0 2012

4 copies Rt'd

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:                          JK
DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

Philip L. Stimac; In
Defense of a Lady, Inc.;

Plaintiffs

vs.

Eric Holder, U.S. At-
torney General; Dan Bog-
den, U.S. Attorney for
the District of Nevada;
Scott Pearson, Individ-
ually and as Justice of
the Peace, Small Claims
Court for Washoe County,
Township of Reno; Pat-
rick King, Individually
and as Assistant Bar
Counsel, State Bar of
Nevada; Penny L. Brock;
Michelle Burrows; Law
Offices of Michelle Bur-
rows; Jerry Brown, Indi-
vidually and as Gover-
nor of the State of Cal-
ifornia; Anne Gust

Defendants

3:12-cv-576

**COMPLAINT**

1] Mandamus
2] Mandamus
3] First Amendment
4] 42 USCA 1983
5] 42 USCA 1985
6] Unjust Enrichment
7] Breach of Contract
8] Breach of Implied
   Covenant of Good
   Faith and Fair Dealings
9] Tortious Interference
   With Contract
10] Professional Negligence
   In Violation of Statute
11] Fraud

**REQUEST FOR JURY TRIAL**

I.

**Jurisdiction**

1. Jurisdiction arises in this action under the All

Paid Amt $50ᵒᵉ Date 10/30/2012
NV PMO
Receipt # 1375   Initials JK

1

Writs Act, First and Fifth Amendments of the United States Constitution and Sections 1983 and 1985 of Title 42 of the United States Code.

## II.

### Venue

2. Venue is proper in this judicial district because plaintiffs' religious freedom and other constitutional and civil rights are being denied and thwarted in this judicial district.

## III.

### Exhaustion Of Remedies

3. Plaintiffs are not required to exhaust state or administrative remedies prior to seeking mandamus or pursuing their constitutional and civil rights claims.

## IV.

### Statement Of Case

4. This is a First Amendment religious freedom and whistleblower retaliation case rooted in the bogus disbarment and blacklisting of plaintiff Philip L. Stimac [Hereinafter "Stimac"] from the legal profession. This is being done through the "DOJ-Brown Conspiracy" presently being carried out by defendants United States Department of

Justice [Hereinafter "DOJ"] and Jerry Brown [Hereinafter "Brown]." Plaintiffs also brings state ancillary claims arising from related federal civil rights violations in connection with "Settlement Agreement" between him and Brock dated April 25, 2012.[1] [2]

V.

Parties

5. Stimac is a federal civil rights lawyer and practicing Roman Catholic.

6. In Defense of a Lady, Inc. [Hereinafter "IDL"] is a Nevada non-profit corporation created by Stimac for the purpose of promoting interest in the mission, messages and prophecies of the Blessed Virgin Mary, the patroness of the United States.

7. Eric Holder [Hereinafter "Holder"] is the chief executive officer of DOJ. Holder and his subordinate DOJ lawyers are blacklisting Stimac from the legal profession in violation of his First and Fifth Amendment rights.

8. Dan Bogden [Hereinafter "Bogden"] is the United

---

[1] A true and correct copy is attached and incorporated herein as Exhibit A.
[2] With the exception of the 7th claim which Stimac now challenges on federal due process grounds, each of these ancillary claims exceeds the jurisdiction of the Reno Small Claims Court. As a result, plaintiff was barred from filing these first time claims in Small Claims Court.

Stimac vs. Holder      COMPLAINT                                    3

States Attorney for the District of Nevada. Since 2011,
Bogden and other DOJ lawyers have violated their mandatory,
non-discretionary, ministerial duties to present evidence
to the Federal Grand Jury and meet with Stimac concerning
violations of his federal civil rights.

9. Scott Pearson [Hereinafter "Pearson"] is the Justice
of the Peace for the Reno Small Claims Court. Since August
8, 2012, Pearson has attempted to compel Stimac to appear
in his civil court in an action in which criminal sanctions
could be imposed.[3]

10. Patrick King [Hereinafter "King"] is Assistant Bar
Attorney for the State Bar of Nevada. On August 30, 2012,
King issued a Cease and Desist Order which interfered with
Stimac's religious freedom and denied him federal due pro-
cess and equal protection in connection with his enforce-
ment of the Settlement Agreement.

11. Penny L. Brock [Hereinafter "Brock"] is seeking to
unjustly enrich herself by joining in the DOJ-Brown Cons-
piracy to avoid her lawful obligations under the "Settle-
ment Agreement".

12. Michelle Burrows is an Oregon lawyer plaintiff re-
tained for Brock through the Law Offices of Michelle Bur-

---

[3] Pleadings filed by Stimac clearly informed Pearson he lacked jurisdiction as the Nevada State Legislature delegated jurisdiction to defendant King. At Stimac's request, King commenced an investigation and found no violation of any criminal statute by Stimac.

Stimac vs. Holder     COMPLAINT                                    4

rows [Hereinafter collectively referred to as "Burrows"].
In an attempt to defeat the "Settlement Agreement," Burrows launched an interstate conspiracy to thwart Stimac's federal civil rights and advised and encouraged Brock to do the same in Nevada.

13. Brown oversees a corrupt state government and bar association whose smears, retaliation, bogus disbarments and blacklisting of federal civil rights lawyers affects interstate commerce in all fifty states.

14. Gust [Hereinafter "Gust"] is Brown's attorney wife and a co-conspirator in the DOJ-Brown Conspiracy.

VI.

Facts

15. On October 29, 2012, Stimac asked defendant Bogden to present more evidence to the Federal Grand Jury for the District of Nevada pursuant to 18 U.S. Code, Section 3332[a].[4] Under that statute, any federal lawyer who receives evidence from a citizen has a mandatory non-discretionary duty to present it to the grand jury.

16. On May 27, 2011, plaintiff asked this honorable court to compel defendants Bogden and Holder to perform their 18 USCA 3332[a] duties. He also asked the Hon. Robert

---

[4] A true and correct copy is attached herein as Exhibit B.

Stimac vs. Holder    COMPLAINT    5

Jones, to whom that case had been assigned, to present

evidence to Nevada's federal grand jury. Plaintiff also

asked Judge Jones to compel DOJ lawyers in Portland, San

Francisco and San Diego to present evidence to federal

grand juries in connection with complaints of judicial

misconduct which had been fixed as part of DOJ's black-

listing scheme.

17.   Instead of presenting the evidence to the federal

grand jury, Judge Jones intercepted it and ruled it to be

frivolous. Judge Jones relied on a bogus report by federal

judges in San Francisco whom 9th Circuit Chief Judge Alex

Kozinski had personally disqualified for bias against

Stimac.

18.   In response, Stimac filed a complaint of judicial

misconduct against Judge Jones. 9th Circuit Judge Harry

Pregerson fixed that complaint for Jones. As Exhibit B

reveals, 9th Circuit Court judges have fixed every single

complaint of judicial misconduct plaintiff has filed since

1994, including Complaint No. 11-90178, 11-90179 11-90183,

11-90184 which contain allegations of violations of his

religious freedom.

19.   Evidence undeniably confirms that even U.S. Supreme

Chief Justice John Roberts and Associate Justice Anthony

Stimac vs. Holder      COMPLAINT                              6

Kennedy have fixed complaints of judicial misconduct Stimac

has filed. Under Kozinski's tenure as 9th Circuit Chief

Judge, so many complaints of judicial misconduct have been

fixed and tampered with that grand jury intervention is the

only way to protect the constitutional and civil rights of

plaintiffs and other citizens in Nevada and other states.

VII.

#### First Claim For Relief

Mandamus

Philip L. Stimac
IDL

against

Eric Holder
Dan Bogden

20.  Plaintiff incorporates Paragraphs 1 through 19 by

reference as if fully set forth.

21.  The purpose of mandamus is to allow federal courts

to issue writs when federal officers like Holder and Bogden

refuse to perform a duty which is mandatory, ministerial

and so plainly prescribed that it is free from doubt. Nel-

son vs. Kleppe [1976] 591 F. 2d 1265 [9[th].Cir.].

22.  To prevail on a claim of mandamus, Stimac and IDL

need only show 1] they have a clear right to relief;

2] there is no adequate remedy to obtain the relief sought;

3] defendants have a clear duty to act. LeBeau vs. Town of Spencer [2002] 190 F. Supp. 2d 131.

23. Congress' enactment of 18 USCA 3332[a] clearly creates a duty by Holder and Bogden to present evidence that 9th Circuit Court judges are thwarting the mission and messages of the patroness of the United States by fixing federal lawsuits and complaints of judicial misconduct.

24. Stimac and IDL clearly have a right to relief under Section 3332[a] because they are its intended beneficiar-ies. They have no adequate remedy because defendants Holder and Bogden oversee and control the federal grand jury. Defendant's duty is clearly stated in the language of Section 3332[a].

25. Until and unless Holder and Bogden perform their mandatory duties, Stimac and IDL will continue to suffer interference with their religious freedom and irreparable denial and impingement to other federally protected con-stitutional and civil rights.

WHEREFORE, PLAINTIFFS PRAY,

1] For an order compelling defendants Holder and Bogden to:

a] present Exhibit B and other evidence Stimac has concerning the fixing of complaints of judicial

Stimac vs. Holder    COMPLAINT                    8

misconduct and blacklisting to the Federal Grand

Jury for the District of Nevada;

b] arrange a meeting with plaintiff and the fore-

person of the Grand Jury pursuant to 18 USCA

3332[a].

### VIII.

### Second Claim For Relief

Mandamus

Philip L. Stimac
IDL

against

Eric Holder
Dan Bogden

26.   Plaintiffs incorporate Paragraphs 1 through 25

by reference as if fully set forth.

27.   Defendants Holder and Bogden have a mandatory,

non-discretionary and ministerial duty to meet with

citizens concerning civil rights and to enforce civil

rights in the District of Nevada. This duty is prescribed

by Section 0.50 of Title 28 of the Code of Federal Regu-

lations.

28.   For more than a decade, Stimac has been filing

complaints and asking DOJ, Holder and his DOJ subordinates

in Nevada and other states to meet with him and investigate

violations of his and IDL's civil rights.[5] In violation of their mandatory, non-discretionary and ministerial duties they have refused to do so. Defendant's 28 CFR 0.50 duties are so plainly prescribed they are free from doubt.

29.  Stimac and IDL have a clear right to have violations of their civil rights and denial of their religious freedom investigated because they are the intended beneficiaries of Part 0.50. Defendants duties are clear from the language of Part 0.50. Stimac and IDL have no adequate remedy because defendants are vested with exclusive jurisdiction to meet with citizens concerning civil rights. Holder and his DOJ subordinates have a clear duty to meet with plaintiffs for the purpose of investigating and enforcing their civil rights and denial of religious freedom.

30.  Until and unless Holder and his DOJ subordinates perform their mandatory duties, Stimac and IDL are and will continue to suffer irreparable harm.

WHEREFORE, PLAINTIFFS PRAY,

    1] For an order compelling defendants Holder and Bogden to:

    a] Meet with plaintiff Philip L. Stimac concerning his

---

[5] Prior to incorporating IDL, Stimac attempted to practice his religious faith and beliefs through a Nevada non-profit corporation called Ave Paz.

1   and IDL's civil rights violations pursuant to 0.50 of Title

2   28 of the Code of Federal Regulations;

3        b] File a report with the court and Federal Grand Jury

4   which includes their findings of fact and law in connection

5   
6   with Stimac's bogus disbarment and blacklisting from the

7   legal profession.

8
9                              IX.

10                   Third Claim For Relief

11                   First Amendment Violations
12                   Of Free Exercise of Religion

13                      Philip L. Stimac
14                             IDL

15                          against

16                      Eric Holder
17                      Dan Bogden

18   31.  Plaintiffs incorporates Paragraphs 1 through 30

19   by reference as if fully set forth.

20
21   32.  Stimac is a federal civil rights lawyer and prac-

22   ticing Roman Catholic. He practices his religious faith,

23   beliefs and special devotion to the Blessed Virgin Mary

24   through IDL, whose mission is to promote Marian devotion

25   among members of the legal profession. As part of his

26   
27   religious faith, practice and devotion, Stimac believes in

28   two prophecies given by the Virgin Mary.

Stimac vs. Holder     COMPLAINT                          11

## Prophesy No. 1   Abolishment of Civil Rights

In a secret given to seer Melanie Calvat in 1846 at La Salette, France, Our Lady prophesized that:

> The true faith of the Lord having been
>
> forgotten, each individual will want to
>
> be on his own and superior to people of
>
> the same identity. They will abolish civil
>
> rights as well as ecclesiastical, all order
>
> and all justice would be trampled underfoot
>
> and only homicides, hate, jealousy, lies and
>
> dissension would be seen without love for
>
> country of family.[6]

33.   In 1992, Stimac undertook an extensive research and writing project which included Freedom of Information Act requests from DOJ and 192 executive agencies. His efforts confirmed that Our Lady's civil rights prophecy was being fulfilled. Since the beginning of the Reagan Administration, no U.S. Attorney General had issued the civil rights policies for 192 executive agencies. Tens of thousands of federal attorneys and employees have gone to work enforcing non-existent civil rights policies. In 1994 Stimac asked the federal court in San Francisco to compel

---

[6] Attorney and Marian expert Janice Connell sets the complete text of this prophesy out at  page 75 of *Meetings With Mary* [Ballentine Press, 1996]. In *The Thunder of Justice* [MaxKol Communications, 1993], Ted and Maureen Flynn note this prophecy is meant for the whole world, not just France.

Stimac vs. Holder        COMPLAINT

12

U.S. Attorney General Janet Reno to issue the polices.

34.  DOJ responded with smear tactics, death threats and ordered Stimac to "close your file." When he refused to dismiss his suit against Attorney General Reno, DOJ stole his pleadings from the courthouse and deleted them from the district and circuit court dockets. In an attempt to re-cover the stolen pleadings, Stimac sued a federal district and circuit judge and other court personnel under the fed-eral RICO statute. DOJ lawyer Yonkel Goldstein, Stimac's opposing counsel in Stimac vs. Reno was then disclosed by the State Bar of California as its witness in a bogus dis-barment proceeding which alleged inter alia that Stimac had engaged in acts of moral turpitude and was being "disres-pectful" to court personnel.

35.  Prophesy No. 2  Satan Controls DOJ

On June 12, 1976, at Bayside, New York, the Virgin Mary told seer Veronica Leuken:

> Do not be concerned, My children for the
> eventual victory is with forces from Heaven.
> Satan shall claim any man, woman or child
> who has fallen from grace. Satan will claim
> them to do his work to destroy souls. He will
> enter, he has now entered upon governments in

all walks of life. He now has control of your

media, your schools and your Justice Depart-

ment. Justice? Justice is in blindness. The

faith has grown weak. When my Son returns,

shall he find even a small flicker of faith

left?

36.   In furtherance of this prophecy, Stimac sued Pres-

ident Bill Clinton because he had stolen union dues be-

longing to Stimac's clients in violation of federal cam-

paign finance laws. Although Clinton was named as a private

citizen, his lifetime friend and campaign manager Alan

Bersin illegally used DOJ resources to represent Clinton,

fix the case and contribute to Stimac's bogus disbarment.

37.   In 2010 as part of his attempts to be re-instated,

Stimac sued DOJ lawyer Joseph Russoniello. In that case

DOJ tampered with and intercepted grand jury evidence and

fixed the case which gave rise to complaints of judicial

misconduct which were also fixed.

38.   In the same year, Stimac launched his Elite Lawyers

and Judges Whistleblower blog which details DOJ's black-

listing of him to thwart his Marian prophecy and related

faith-based litigation and advocacy work.

39.   In 2011 Stimac attempted to seek grand jury review

of Holder and Bogden's tampering of grand jury evidence but

that case was fixed by Judge Jones. Stimac then attempted to express his devotion to the Virgin Mary through the creation of IDL but the fact he was not a licensed attorney adversely affected his credibility. Holder and DOJ's role in his bogus disbarment also prevented Stimac from generating the necessary capital and attracting corporate members and leadership.

40.  DOJ's blacklisting tactics also impacted Stimac's ability to produce personal income needed to pursue his religious practice and faith-based work. Defendant Brock, for example, is capitalizing the DOJ-Brown Conspiracy to fraudulently cancel the Settlement Agreement.

41.  DOJ's deliberate refusal to present Stimac's evidence to the grand jury and investigate DOJ wrongdoing is rooted in the suppression of religious freedom and persecution of other Christians by the Obama Administration which fulfill the prophecies of the Virgin Mary that civil rights are being abolished and Satan controls DOJ.

42.  Whether or not Satan controls DOJ, as arms of the federal government, DOJ and Brown judiciary are interfering with Stimac's faith and beliefs, the practice of his faith and beliefs, and the funding, promotion and organization of IDL through their bogus disbarment, blacklisting

Stimac vs. Holder      COMPLAINT                              15

and fixing of every single lawsuit and complaint of judi-
cial misconduct he has filed during his faith-based career
in violation of the First Amendment.[6]

43.   Stimac is an experienced, competent and qualified
federal civil rights lawyer. DOJ's decade-plus blacklisting
and violations of 18 USCA 3332[a] and 28 CFR 0.50 are
being deliberately carried out with fraud, malice and
oppression to the extent punitive damages are warranted.

WHEREFORE, PLAINTIFF PRAYS FOR:

1] Compensatory damages in the amount of
   $10,000,000.00;

2] Punitive damages in the amount of
   $10,000,000.00;

3] Costs and attorney fees;

4] Such other relief as the court deem proper.

---

[6] In addition to violating his religious freedom, defendants are violating his First Amendment right to speech in an attempt to thwart the publication of his manuscript The Deceivers and the Deceived: Looking for the Virgin Mary. Plaintiff will amend his complaint to include this claim at a later date.

Stimac vs. Holder   COMPLAINT                                      16

## X.

## Fourth Claim For Relief

### 42 USCA 1983

### Philip L. Stimac

### against

### Scott Pearson
### Patrick King
### Jerry Brown

44.  Plaintiff incorporates Paragraphs 1-43 by reference as if fully set forth.

45.  As a citizen of the United States, Stimac has a fundamental right to enter into contracts with defendant Brock in furtherance of the real estate and disability rights services she requested.

46.  As a citizen of the United States, Stimac has a fundamental right to have the Settlement Agreement interpreted and enforced by defendant Pearson in a manner which is free from highly prejudicial and irrelevant evidence and smear tactics rooted in the DOJ-Brown Conspiracy.

47.  Stimac also has a right to due process of law by defendant King which includes freedom from malicious smears by Brock and her lawyers secretly set in motion at Stimac's exclusion for the sole purpose of defeating his legal and equitable rights under the Settlement Agreement.

48.  Under the First Amendment, Stimac has a further

Stimac vs. Holder    COMPLAINT                              17

fundamental right to express his thoughts and beliefs and practice his religious faith and litigate and advocate his beliefs that civil rights are being destroyed in America as a result of Satan's control over DOJ and that Brock, King, Brock's lawyers and Brown consider themselves "superior" to Stimac and can, "abolish [his] civil rights" and "trample[d] underfoot all order and all justice under the Settlement Agreement through "hated . . . lies and dissension.

49. As a citizen of the United States, Stimac also has a right to live, work, prosper, enjoy personal and business relationships and develop and conduct the business of IDL without interference from Brown or the role he plays in the DOJ-Brown Conspiracy.

50. Defendants Scott Pearson, Patrick King and Jerry Brown are persons under 42 USCA 1983.

I. Constitutional Deprivations By Defendant King

A] Violations of Stimac's Religious Freedom

50. Under the First Amendment, Stimac has a right to practice his religious faith and beliefs through his blog, IDL, and to support himself and IDL by entering into contracts to provide disability rights and real estate services requested by Brock. King violated Stimac's reli-

gious freedom by conspiring with Brock to issue a Cease and Desist Order which effectively destroyed Stimac's rights under the Settlement Agreement which was earmarked for IDL.

B]   **Due Process Violations By Defendant King**

52.   On August 30, 2012, defendant issued a Cease and Desist Order ruling that plaintiff had engaged in the unauthorized practice of law. The complaint was maliciously filed by defendant Penny Brock for the sole purpose of defeating plaintiff's credibility and attacking his character to defeat his rights under the Settlement Agreement.

53.   Prior to that time, Brock had filed and threatened to file malicious complaints against plaintiff with the Oregon State Bar, the Portland District Attorney, the Reno Police Department and the Reno Small Claims Court.

54.   King's Order was highly prejudicial and thwarted plaintiff's federal constitutional rights in litigation involving the Settlement Agreement.

55.   Defendant's Cease and Desist Order denied plaintiff due process of law under the Fifth Amendment of the U.S. Constitution for the following reasons:

a]   King denied plaintiff any input, including a right to be heard and offer evidence about Brock's motives and history of filing bogus harassment, stalking and blackmail com-

Stimac vs. Holder      COMPLAINT                              19

plaints against him;

b] King's Order ignored the fact that Brock maliciously filed her complaint four months after the Settlement Agreement for the sole purpose of canceling the Settlement Agreement;

c] King's Order failed to identify a single fact to support his finding that plaintiff engaged in the unauthorized practice of law;

d] King's Order was based on evidence which Brock had illegally obtained by hacking into plaintiff's personal computer documents;

e] King relied on numerous misrepresentations and omissions by Brock;

f] King refused to recall or amend his Cease and Desist Order after plaintiff provided him with full and fair contradictory evidence.

g] King refused to consider or include the exhibit from the complaint Stimac filed with Pearson confirming that Brock was filing malicious complaints to cancel the Settlement Agreement.

C]   <u>Equal Protection Violations By Defendant King</u>

56.   At all times, Brock's lawyer Michael Sullivan was a member of a class of persons, *viz.* a member of a State Bar establishment Nevada law firm to which special and preferred treatment was given at the exclusion of non-State Bar member Nevada citizens like Stimac.

57.   Defendant King denied plaintiff equal protection of law under the Fifth Amendment by:

    a]   Failing to investigate the fact that Stimac's complaint filed with defendant Pearson included an exhibit which put the State Bar of Nevada on notice that Brock was maliciously using State Bar procedures to cancel her Settlement Agreement;

    b]   Refusing to investigate the fact that Sullivan was holding himself out as a State Bar lawyer with authority to put bogus cases on Nevada citizens in violation of their constitutional and civil rights;

    c]   Refusing to process a complaint Stimac filed against Sullivan for ethical violations in connection with the Settlement Agreement between plaintiff and Brock.

## II. Constitutional Deprivations By Defendant Pearson

### A] Due Process Violations

58.   On August 7, 2012, Pearson ordered Stimac to appear at the trial which would determine his and Brock's rights under the Settlement Agreement. Through his initial plead-ing, a court conference call and voluminous documentary evidence, Brock's attorney disclosed his intent to pros-ecute Stimac for violation of a Nevada statute which im-posed criminal liability.  In an attempt to protect his 5th Amendment right to due process, plaintiff filed two first-time written requests for a continuance.

59.   Pearson denied both, dismissed plaintiff's suit and granted a frivolous boilerplate counter-claim Brock had filed. Through motions providing the proper federal auth-orities, Stimac asked to vacate the dismissal and set aside Brock's counter-claim.

60.   Pearson also denied both of these in an order which did not mention Stimac's federal civil rights or Pearson's lack of jurisdiction to impose criminal liability in his small claim court.

## II.  Constitutional Deprivations By Defendant Brown

### A. Due Process Violations

61.   Brown oversees a corrupt state government and bar

association conspiracy which operates to insulate and pro-
tect himself, Gust and his elite lawyer cronies from crim-
inal prosecution. Since 2009, he has personally played an
active role in the blacklisting of Stimac and other civil
rights lawyers through his acts and omissions of himself,
Gust and his subordinates. Through the DOJ-Brown Cons-
piracy grand jury evidence has been intercepted and in-
vestigations tampered with and more than twenty ethics com-
plaints Stimac has filed, including those against Brown and
Gust have been fixed.

62.   The acts and omissions of King, Pearson and Brown
herein alleged were the legal and proximate cause of dam-
ages suffered by plaintiff under the Settlement Agreement.

63.   King, Pearson and Brown's acts and omissions were
done with fraud, malice and oppression to the extent pun-
itive damages are warranted.

WHEREFORE, PLAINTIFF PRAYS FOR:

    1] Compensatory damages according to proof at time of
       trial;

    2] Punitive damages in the amount of $5,000,000.00.

    3] Costs and attorney fees;

    3] Such other relief as the court deem proper.

XI.

## Fifth Claim For Relief

42 USCA 1985

Philip L. Stimac

against

Patrick King
Penny L. Brock
Michelle Burrows
The Law Firm of Michelle Burrows
Jerry Brown
Ann Gust

64.  Plaintiff incorporates Paragraphs 1-63 by reference as if fully set forth.

65.  At all times, Stimac was entitled to constitutionally protected religious freedom, due process, equal protection of law and other civil and constitutional rights which he was and is being denied under the DOJ-Brown Conspiracy.

66. In violation of 42 USCA 1985, King, Brock, Burrows, the Law Offices of Michelle Burrows, Brown and Gust willfully and knowingly entered into a series of conspiracies specifically calculated to deny Stimac these rights by:

        a]    Secretly meeting, communicating and planning plots and conspiracies;

        b]    Filing bogus harassment, stalking and blackmail complaints against Stimac with govern-

ment agencies for four months;

c]   Launching a vicious smear campaign against
     Stimac with government agencies and Pearson;

d]   Retaining Attorney Sullivan to illegally
     use Pearson's court to litigate issues
     which the Nevada Legislature had delegated
     to King;

67.   In violation of Section 1985, defendant King:

a]   Secretly met with Brock at Stimac's
     exclusion for the purpose of issuing
     a Cease and Desist Order which was based
     on fraud and deceit.

b]   Refused to recall or modify the Cease and
     Desist Order after Stimac provided evidence
     of Brock and Burrow's conspiracy to inter-
     fere with his constitutional and civil
     rights for the sole purpose of defeating
     Stimac's rights under the Settlement Agree-
     ment;

c]   Over Stimac's continuing objection, refused
     to meet or allow him any input in the pro-
     cess.

68.   In violation of Section 1985, defendants Brown and
Gust conspired to fail to perform their lawful duties, re-

fused to investigate, process or respond to complaints Stimac filed and covered up the fact that the DOJ-Brown Conspiracy was rooted in a racketeering enterprise headed up by Brown and his puppet master Thomas V. Girardi, who has his hands all over California's state bar and legal system. Through this enterprise, Brown and Gust were also able to have state bar complaints Stimac filed against them dismissed. The acts and omissions herein alleged were the legal and proximate cause of damages suffered by Stimac under the Settlement Agreement.

69. The acts and omissions of all defendants were done with fraud, malice and oppression to the extent punitive damages are warranted.

**WHEREFORE, PLAINTIFF PRAYS FOR:**

    1] Compensatory damages according to proof at time of trial;

    2] Punitive damages in the amount of $5,000, 000.00;

    3] Costs and attorney fees;

    4] Such other relief as the court deem proper.

## XII.

## Sixth Claim For Relief

Unjust Enrichment

Philip L. Stimac

against

Penny L. Brock

70.  Plaintiff incorporates Paragraphs 1-69 by reference as if fully set forth.

71.  **A]   Real Estate Services Provided By Stimac**

In April, 2012, Brock appeared at Stimac's real estate office and asked for advice on four separate real estate matters.[7] Brock was fully aware plaintiff was not licensed by the State Bar of Nevada and had the legal right to work as a real estate consultant for Citadel Realty Services.

72.  In an attempt to save attorney fees, Brock then asked Stimac to perform initial investigative and other non-legal services and negotiate a trade of properties. If unsuccessful, Stimac would also help Brock find an attorney. Stimac insisted written documents which clearly stated he was not a licensed attorney, nor employed as Brock's attorney.

73.  Before Stimac and Brock could finalize their

---

[7] Winnemucca Budget Inn, Arrowhead Cattle Co., Rocking Z Lazy B Ranch and Rent All Equipment, Inc.

Stimac vs. Holder      COMPLAINT                                    27

agreement, it was necessary for Stimac to spend several hours helping Brock through her emotional crisis as the bogus blackmail, stalking and harassment complaints she subsequently filed against Stimac coupled with other Nevada and interstate filings, reveal she acts out unresolved personal issues through the legal system. Stimac's tasks were further complicated because a series of poor real estate decisions had exposed Brock to a financial loss in excess of $500,000.00. The real estate services Stimac provided dove-tailed with other non-legal work Stimac performed for Brock as her disability rights, elder abuse and onliine advocate. After Stimac was able to help Brock stabilize her emotions, he began the difficult task of eliciting the salient facts from her.

74.   Stimac performed each and every term of his agreement with Brock. When real estate negotiations proved unsuccessful, he arranged and attended a meeting between Brock and the Reno law firm of Molof and Vohl. He also referred her case to the Law Offices of Joe Laub.

75.   Among the many benefits Brock received from the real estate services Stimac provided were, personal and emotional support in his dual role as real estate and disability advisor; the unraveling of complex fact patterns for determination of referral to the proper lawyer,

accountant or other professional, identification of is-

sues, investigation of court, corporate and title records,

negotiation attempts with Brock's owner/principal, refer-

rals to CPA's and attorneys, etc.

76. Brock clearly acknowledged these benefits and re-

peatedly praised Stimac and his work in numerous written

communications with him. She also praised his competence

and personal integrity in written communications she made

with Burrows and psychological professionals Stimac re-

ferred her to for treatment of her compulsive need to act

out her personal issues through the legal system.

77. As Exhibit A reveals, on April 25, 2012, she speci-

fically and unconditionally agreed in writing to settle

with Stimac for $4000.00, a $1500.00 bonus in her real

estate cases and a lien in an undisclosed amount in the

case in which she was represented by Burrows. As Exhibit A

further reveals, Brock went on to express regret Stimac was

not able to serve as her lawyer and stated she was "bless-

ed" to have him on her team.

78. B]   Contract No. 2

Brock also asked Stimac to draft Contract No. 2 to

memorialize the terms of his services as her disability

rights advisor. This was supplemented by a series of

written and oral agreements which King did not find to violate any Nevada law, nor be grounds for Brock to avoid payment of the Settlement Agreement.

79.  Between September, 2011 and April, 2012, Stimac performed each and every term of Contract No. 2 which resulted in the receipt by Brock of the following benefits:

Personal and emotional support and advice; referral to psychologists Dr. Karin Huffer, Steven Willis and Art Brown; meeting with Brock and Dr. Brown; referral to out-of-state lawyers; support and companionship on two out-of-state trips to meet with and retain lawyers, review court records; visit her recently deceased mother-in-law's gravesite.

80.  Throughout 2011 and 2012, Brock also received other benefits under Contract No. 2 which she acknowledged in writing, including Stimac's networking with elder abuse experts and advocates, Stimac's drafting and posting of three articles about the Brock Family on his blog; emotion-al support at a meeting with Attorney David Shawcross; a refund of fees from Shawcross; the employment of Attorney Jeff Fraiser; an out-of-state trip made by plaintiff to retain Fraiser; bringing Fraiser up to speed on Brock's disability rights in state case; preparing to testify on Brock's behalf as her disability rights advocate; attend-

ance by Stimac at two out-of-state hearings; a long

meeting with Fraiser at his office; personally filing

papers Fraiser had prepared with the court to save Brock

legal expenses, etc.

81.   Stimac also conferred various other benefits on

Brock under Contract No. 2, including the employment of

Attorney Michelle Burrows; an out-of-state trip made by

Stimac for the purpose of retaining Burrows and bringing

her up to speed on Brock's disability and other issues;

online, telephonic and conference call communications with

Orrin Onken and other elder abuse lawyers and experts;

helping Brock gather information about a nonprofit corp-

oration she desired to set up in memory of her mother-in-

law.

82.   Up to the day Brock made her Settlement Agreement

offer, she repeatedly praised and acknowledged the work

plaintiff did under Contract No. 2, a copy of which is

attached and incorporated herein as Exhibit C.

83.   Brock's hands are dirty because:

        a] She induced Stimac to enter and perform Con-

            tract No. 2 by claiming to be understanding

            and sympathetic of the DOJ-Brown Conspiracy

            and the consequences it was playing in his

Stimac vs. Holder        COMPLAINT                              31

life.[8]

b] Throughout the course of their friendship, Brock put unfair and unreasonable pressure on Stimac by inducing him to do work for her which she later reported to King to be violative of regulations he enforced.[9]

d] In an attempt to cancel the Settlement Agreement, Brock filed blackmail, harassment and stalking complaints with government agencies she knew were bogus, malicious and without merit or any supporting evidence.

WHEREFORE, PLAINTIFF PRAYS FOR:

1] $5000.00 under the Settlement Agreement;

2] The $1500.00 bonus promised plaintiff under Contract No. 1;

3] A lien in the amount of Five Percent [5%] on Contract No. 2;

4] Punitive damages in the amount of $75,000.00;

5] Costs and attorney fees;

6] Such other relief as the court deem proper.

---

[8] Attached and incorporated herein as Exhibit D.
[9] Ibid, Exhibit E.

Stimac vs. Holder     COMPLAINT                                    32

## XIII.

## Seventh Claim For Relief

### Breach Of Contract

### Philip L. Stimac

### against

### Penny L. Brock

84.  Plaintiff incorporates Paragraphs 1-83 by reference as if fully set forth.

85.  On April 25, 2012, Brock promised to make her first payment of $1000.00 under the Settlement Agreement on May 1, 2012. She also agreed to negotiate the exact amount of compensation she had promised Stimac under Contract No. 2.

86.  On or about May 2, 2012, Brock began conspiring with Burrows to breach the Settlement Agreement by filing and threatening to file bogus harassment, blackmail and stalking complaints against Stimac with government enti-ties.

87.  In furtherance of this conspiracy to breach the Settlement Agreement, Brock made similar bogus complaints with Reno Police Department and defendant Pearson.

88.  Stimac has performed each and every term of the Settlement Agreement and has suffered economic damages in the amount of $6500.00 proximately caused by Brock's breach.

Stimac vs. Holder     COMPLAINT                                    33

WHEREFORE, PLAINTIFF PRAYS FOR:

1] $5000.00 under the Settlement Agreement;

2] The $1500.00 bonus promised plaintiff under Contract No. 1;

3] A lien in the amount of Five Percent [5%] on Contract No. 2;

4] Costs and attorney fees;

5] Such other relief as the court deems proper.

## XIV.

### Eighth Claim For Relief

Breach Of Covenant of
Good Faith and Fair Dealing

Philip L. Stimac

against

Penny L. Brock

89.  Plaintiff incorporates Paragraphs 1-88 by reference as if fully set forth.

90.  Nevada law imposes an implied covenant of good faith and fair dealing on Brock in connection with Contracts No. 1, 2 and the Settlement Agreement.

90.  Through her fraudulent acts, omissions and conspiracies herein alleged, including but not limited to the filing of malicious complaints with government agencies in

an attempt to cancel the Settlement Agreement, Brock breached her implied covenant of good faith and fair dealings.

91.  Brock further and specifically breached her covenant of good faith and fair dealing by refusing to appraise Stimac of the status of the two cases she had promised him compensation on, refusing to mediate a simple and straight-forward collection case, hacking into his personal computer documents and filing a complaint with King after she begged Stimac to help and spearheading a vicious smear of Stimac without ever addressing or pleading the salient issues in this simple and straight-forward collection case.

92.  Brock's violation of her implied covenant of good faith and fair dealing was committed with fraud, malice and oppression to the extent punitive damages are warranted.

WHEREFORE, PLAINTIFF PRAYS FOR:

  1] Compensatory damages according to proof at time of trial;

  2] Punitive damages in the amount of $250,000.00;

  3] Costs and attorney fees;

  4] Such other relief as the court deems proper.

Stimac vs. Holder      COMPLAINT                                    35

XIV.

## Ninth Claim For Relief

Tortious Interference With Contract

Philip L. Stimac

against

Patrick King
Michelle Burrows
The Law Office of Michelle Burrows

93.   Plaintiff incorporates Paragraphs 1-92 by reference as if fully set forth.

94.   At all relevant times, defendants King, Burrows and The Law Offices of Michelle Burrows were aware of the fact that Stimac had well-defined legal and equitable rights under the Settlement Agreement and his various written and oral contracts she had entered into with Stimac.

95.   Stimac had referred Brock to Burrows and travelled to Oregon to attend a meeting between Brock and Burrows. Burrows was aware that under Contract No. 2, Brock had retained Stimac as her disability rights advocate and promised him compensation.

96.    Burrows also knew the blackmailing, stalking and harassment complaints she and Brock made and threatened to make lacked evidence. In total disregard of these and other facts, Burrows and The Law Offices of Michelle Burrows

Stimac vs. Holder      COMPLAINT                                    36

launched a vicious smear of Stimac for the purposes of interfering with Contracts No. 1, 2 and the Settlement Agreement which included attacks on his character, credibility, competency and mental state.

97.  As a lawyer employed by the State Bar of Nevada, King was also aware that Stimac was entitled to due process and equal protection. Defendant was also aware that his highly prejudicial Cease and Desist Order would unfairly interfere with Stimac's legal or equitable rights under the Settlement Agreement.

98. King and Burrow's malicious disregard of written, online and telephonic communications, from Stimac that they were interfering with his contracts with Brock constituted fraud, malice and oppression to the extent punitive damages are warranted.

WHEREFORE, PLAINTIFF PRAYS FOR:

1] Compensatory damages according to proof at time of trial;

2] Punitive damages in the amount of $250,000.00;

3] Costs and attorney fees;

4] Such other relief as the court deems proper.

XV.

## Tenth Claim For Relief

Gross Professional Negligence In
Violation Of Statute

Philip L. Stimac

against

Patrick King

99.   Plaintiff incorporates Paragraphs 1 through 98 by reference as if fully set forth.

100.   At all times, King had a duty to investigate Brock's malicious post-lawsuit complaint in a manner consistent with the standard of care of a reasonable state bar lawyer under similar circumstances. This duty was prescribed by statue and Nevada State Bar written and online policies to protect the citizens of Nevada, a class of persons of which Stimac was a member. Through its enactment of Title 42 United States Code, Section 1983 and 1985, Congress had negated any state privilege, immunity, or need for Stimac to file an administrative claim prior to filing this suit.

101.   King breached his duty owed to Stimac by refusing to meet with him, return phone calls, respond to Stimac's correspondence, or consider any of his evidence, including the fact that his first pleading in the Settlement Agree-

Stimac vs. Holder    COMPLAINT                                    38

ment alleged and contained an exhibit which confirmed

Stimac had previously complained to the State Bar of Nevada

that Brock and Attorney Sullivan were using State Bar pro-

cedures to destroy his legal and equitable rights under the

Settlement Agreement.

102.   As a proximate cause of King's negligence, Stimac

suffered economic damages under the Settlement Agreement.

WHEREFORE, PLAINTIFF PRAYS FOR:

    1] Compensatory damages according to proof at time of

        trial;

    2] Costs and attorney fees;

    3] Such other relief as the court deem proper.

XVI.

### Eleventh Claim For Relief

### Fraud

Philip L. Stimac

against

Penny L. Brock

103.   Plaintiff incorporates Paragraphs 1 through 102

by reference as if fully set forth.

102.   On July 3 and August 1, 2012, Brock made the

following material representations to the Reno Police

Department which are set forth in Case No. 120103950,

Stimac vs. Holder     COMPLAINT                           39

Report No. T12005326 with sufficient specificity to satisfy FRCP 11.[10]

   a]   Stimac was blackmailing, harassing and
        stalking her and was going to ruin her
        reputation;

   b]   She does not owe Stimac any money;

   c]   Stimac was mentally i[sic]nstable;

   d]   She feels unsafe as a result of her breach
        of the Settlement Agreement;

103.   Subsequent to making the misrepresentations con-
tained in Case No. 120103950, Brock repeated them to de-
fendants Pearson, King and Burrows and Attorney Michael
Sullivan.

104.   At the time Brock made these material misrepre-
sentations they were untrue, false and misleading. Brock
knew them to be untrue, false and misleading but made them
for the sole purpose of avoiding her contractual liability
in this simple straight-forward collection case.

105.   The material misrepresentations were untrue,
false and misleading because, as Exhibit F reveals, Stimac
was simply trying to get Brock to honor the Settlement
Agreement. Furthermore, he never blackmailed, harassed or

---

[10] Upon the filing a responsive pleading by any defendant, Stimac will provide copies and ask the court to take judicial notice of these official police documents.

stalked Brock or ever gave her any reason to feel unsafe. On the contrary, he was a kind, loyal and supporting friend who always acted like a gentleman and treated Brock like a lady.

106.   In making her misrepresentations of material fact, Brock also made material omissions, including failing to disclose the fact she had signed the Settlement Agreement.

107.   In reliance on Brock's material misrepresentations and omissions, Reno Police Department and the defendants named in Paragraph 103 were sold a bill of goods by Brock which resulted in their giving her and her case undue sympathy and credibility which proximately caused Stimac's economic damages and deprivation of his federal civil rights.

108.   Brock's acts, representations and omissions were done with fraud, malice and oppression to the extent punitive damages are warranted to deter her from pursing this kind of behavior with her other friends and business associates.

WHEREFORE, PLAINTIFF PRAYS FOR:

    1] Compensatory damages according to proof at time of trial;

    2] Punitive damages in the amount of $75,000.00.

3] Costs and attorney fees;

3] Such other relief as the court deems proper.

DATED: October 29, 2012

_____
PHILIP L. STIMAC

# SETTLEMENT AGREEMENT

Phil,

Have reviewed the agreement.

Here are some changes for your consideration:

6] add in second line of 6] after Thelma Brock which would read, **"and the Bidegary case"** in third line **change FIVE to "Four"** and last line change to {**$4,000.00**]

Think it should be $4,000 since I already gave you $1,000. I know, I know you can give me all kinds of reason why you should get $5,000.

The point is, I am attorney poor right now.

If I net an amount over and above the $390,000 Bidegary has stolen from me, then I will give you **a bonus of $1,500.** Remember, I am looking at a $85,000 tax bill (that may be even higher), plus interest and one other amount. I won't get the 80,000, if Bidegary refunds it to me. It will go to pay the IRS so I won't go to Carson city.

Also, I am attorney poor right now. I have to pay Joe Laub $3750 this month and $3750 in May. i am not sure what additional amounts I may have to pay. also I have Jeff's billings hanging over my head and he may get really tough on paying those before the June 12 hearing.

If I net an amount over and above the $390,000 Bidegary has stolen from me, then I will give you **a bonus of $1,500.** Remember, I am looking at a $85,000 tax bill (that may be even higher), plus interest and one other amount. I won't get the 80,000, if Bidegary refunds it to me. It will go to pay the IRS so I won't go to Carson city.

Also, I am attorney poor right now. I have to pay Joe Laub $3750 this month and $3750 in May. i am not sure what additional amounts I may have to pay. also I have Jeff's billings hanging over my head and he may get really tough on paying those before the June 12 hearing.

That being said, I know you will need rent money and money to pay your bills in May. I can't pay you $ 4 grand in May. I can pay $1000 in May and I don't know what to tell you for June because I don't know what Jeff might do. I don't own a home to take out a second. I would hope to be able to pay $1000/mo in June, July and August. Or if GOD blesses me in some unexpected way, then I could bump it up.

The reason I can pay you $1000 in May is I just got notice I am to get unexpected check for $1,145 May 1st. But 10% of that ($114 is the tithe to pay GOD for this unexpected blessing). The balance will be an offering to sow a seed to ask GOD's blessing in the win of the Portland and Bidegary cases. The teaching from Scripture is GOD does not give a harvest (of financial blessing) unless I plant a financial seed.

I planted a seed on April 14 of $238 and now I have reaped a harvest of $1,145! Better than placing a bet at the PM. I'd rather "take my chances" with GOD.

So I have the $1000 to pay you in May! Am excited to see GOD bless financially in unexpected ways.

Phil, I would ask that you not spend any of the money I give you on gambling. Instead I would encourage you to place a bet on GOD and consider giving 10% of the amount to GOD. This will be a way for you to test GOD and see if HE will bless you for giving the tithe of 10% to Him as He asks.

**On May, 1, 2012, Ms. Brock**
**Breached Settlement**
**Agreement**

EXHIBIT A

Then consider sowing a seed offering to ask Him give a break thru on your case. I have found that one cannot out give GOD. He turns around and protects financially and blesses financially. That is His promised for being obedient in giving to Him by giving to His ministries that souls may be saved and blessed thru feeding the hungry and caring for the needy (ie Reno Sparks Gospel Mission or Catholic Charities, etc)

I will never know how you spend the money, but consider this a challenge to do this just to bet on GOD as see what he will do. He can give a bigger payout that any of the casinos. GOD loves it when we trust Him and "ask Him to prove " Himself to us. GOD also loves it when we obey him and blesses us for doing that.

7] I am still considering #7. But thought if we could reach an agreement on 1-6, that is a start.
I am so blessed to have you on my legal team. With you could represent me and argue my cases. At least you can help plan strategy. How did you like the letter I sent Mr. Frasier this morning?
Talk soon,
Penny

- New
- ⋮
- Reply
- Reply all
- Forward
- ⋮
- Delete

# Phil Stimac

395 Greenstone Dr.        Reno, NV 89512        PH. 775 742 4961

October 29, 2012

Dan Bogden
United States Attorney
Nevada District
Office of U.S. Attorney
Liberty at Sierra
Suite 600
Reno, NV 89501

> Re: Request for U.S. Attorney to pre-
>     sent evidence to federal grand
>     jury [18 USCA 3332[a]]
>
> Request for meeting re: my civil rights
> [28 CFR 0.50]

Dear Mr. Bogden:

I am writing to follow up on my 2011 and 2012 requests for you and other U.S. Attorneys to present evidence of violations of the federal criminal code to the federal grand jury. I am also requesting a meeting to discuss violations of my civil rights by DOJ and federal judges.

Attached is my most recent for a meeting with 9th Circuit Chief Judge Alex Kozinski. I am available to meet with you in Reno or Las Vegas at your very earliest con- venience.

Thank you, Mr. Bogden, for taking time from your busy schedule to review my concerns.

Very truly yours,

PHIL STIMAC

**18 USCA 3332[a] Request**                    **EXHIBIT B**

Philip L. Stimac
395 Greenstone Drive
Reno, NV 89512
PH. 775 742 4961

In Pro Se

### IN THE UNITED STATES COURT OF APPEALS

#### FOR THE NINTH CIRCUIT

| | |
|---|---|
| In Re Complaints of Jud-icial Misconduct No.11-90178, 11-9017911-90183, 11-90184 ]]]]]] | Petition For Review Pursuant To 28 USCA 352[c]; Request For Meeting With Chief Judge Alex Kozinski Or Other High Ranking Court Official And Request United States At-torney General Eric Holder And United States Attorney Dan Bogden Present Evidence Of Violations Of The Federal Criminal Code To The Nevada Federal Grand Jury Pursuant To Title 18, Section 3332[a] Of The United States Code |

IN RESPONSE TO the order of the Hon. Harry Pregerson

and transmittal letter of Court Executive Cathy Catterson

dated August 16, 2012, Complaintant Philip L. Stimac hereby

petitions the Judicial Council for review pursuant to 28

USCA 352[c]; requests a meeting with Chief Judge Alex Ko-

zinski or other high ranking court official and requests

United States Attorney General Eric Holder And United

States Attorney Dan Bogden present evidence of violations

of the federal criminal code to the Nevada Federal Grand

Jury pursuant to Title 18, Section 3332[a] of the United States Code based on the following:

## I.

### Introduction

Complaintant is a federal civil rights attorney and a practicing Roman Catholic with special devotion to the Blessed Virgin Mary, the patroness of the United States. In violation of his fundamental rights secured under the First Amendment of the United States Constitution, Complaintant was disbarred and is being blacklisted from the legal profession by federal judges and DOJ lawyers.

## II.

### Factual And Legal Basis
### For Review

As part of his religious faith, belief and practice, Complaintant believes in the following prophecies and warnings given by the Virgin Mary:

> a] <u>Abolishment of Civil Rights</u>. In a secret given to seer Melanie Calvat at La Salette, France, Our Lady warned that civil rights would be abolished.[1]

---

[1] Attorney and Marian expert Janice T. Connell sets forth the text of this secret in *Meetings With Mary*, Ballentine Press, 1996.

b] <u>Corruption in U.S. Department of Justice</u>

[DOJ]. During her apparitions to seer Veronica Leuken at Bayside, New York, the Virgin Mary also warned of corruption in DOJ.[2]

Since 2010, Complaint has asked Supreme Court Justice Anthony Kennedy to investigate his blacklisting which includes the tampering of more than a dozen complaints of judicial misconduct including the above-referenced.[3]

Like other non-merit-related complaints of judicial misconduct filed by Complaintant, the above mentioned contain specific allegations which support Complaintant's blacklisting and denial of religious freedom allegations.

His complaints clearly reveal the Hon. Charles Legge and J. Clifford Wallace were part of a conspiracy to disbar Complaintant after he named them as federal RICO defendants [<u>Stimac vs. Clinton</u>] because they let DOJ lawyers steal Complaintant's pleadings and delete them from the district and circuit court dockets in <u>Stimac vs. Reno</u>.

Other complaints of judicial misconduct rooted in <u>Stimac vs. Russoniello</u>, <u>Stimac vs. Wieking</u> and <u>Stimac vs.</u>

---

[2] This is discussed in *Virgin Mary's Bayside Prophecies*, a six volume paperback set available at http://tldm.org.
[3] Justice Kennedy has administrative oversight of the Ninth Circuit.

Obama include specifically well-plead allegations of non-merit-related grand jury tampering by district and circuit judges.

Documents Complainant filed in Stimac vs. Obama and also lodged with Justice Kennedy clearly support evidence of blacklisting and grand jury tampering by district and circuit judges and DOJ lawyers in Portland, Reno, San Francisco, San Diego and Washington, D.C.

In addition to fixing every complaint of judicial misconduct Complainant has ever filed, the judges complained against have fixed every lawsuit he has filed in retaliation for Complainant's suing Judge Wallace, Court Executive Cathy Catterson and other court personnel under te federal RICO statute to recover his stolen pleadings.

It is Complainant's position that Judge Pregerson is mistaken and the meeting which Complainant has been re-questing for several years is essential to the fair ad-judication of this matter.

III.

Conclusion

Based on the foregoing, Complainant Philip L. Stimac respectfully requests:

1] Judge Pregerson's order dated August 16th, 2012 be

vacated;

2] Complaintant's concerns be fairly addressed through
   a meeting with Chief Justice Alex Kozinski or
   another high ranking court official;

3] Attorney General Holder and U.S. Attorney Bogden
   perform their mandatory 18 USCA 3332[a] duties
   and present this matter to the Federal Grand Jury
   for the District of Nevada.

                              Respectfully submitted,


Dated: September 17, 2012        _____
                                 PHILIP L. STIMAC

Phil,

Please draft an Understanding of Agreement for your work on the Portland Case. Because it is unknown the direction this case may take, it should include different contingencies (ie the need for
hiring a Portland attorney, etc.)

Variables may include:

1. It is unknown how long this case may drag on.

2. Ideally, it would go to mediation where you could represent me. However, it may end up in court and a civil lawsuit and the need for appeals, etc. and hiring attorney(s).

3. Affecting the negotiation of this Agreement is the fact you are serving as a Legal Consultant, rather than a licensed attorney.

4. Most often the attorney has an office and staff, which you do not have. You have no overhead.

5. I am providing for you to work out of my office, with office equipment, and keeping the documents in order.

6. I am involved and undertaking some of the work. in this case which helps reduce the cost of your service.

7. This case is opening a potential future for you. That should have some intrinsic value and maybe you should pay me instead?

Seriously, think about it.

8. When attorneys charge clients, how is that supported? Please support your fee. I am willing to pay what is fair.

9. To give you an example, if there was an award of a $500,000. The worst case scenario of bills that would have to be paid:

$200,000 @ 40% = Federal ( 33% - 40%)???

? = Oregon taxes ???

$100,000 = Stimac (asking 20%)

$165,000 = Portland Atty @ 33% ???

$ 25,000 = Aunt Alice @ 5%

$ 20,000 = lawsuit expenses for filing, postage, travel (have ask Pagnano for payment) ????

$610,000 + Bills to be paid

Now why am I doing all this, when I could potentially be in the hole $110,000+????

10. How should this BOA be structured when there are so many unknowns? Again, potentially everyone else will be the winner but me. What Bill's parents worked so hard for and saved towards, that their kids would have an inheritance will be gone after all the investment of my time and financial resources.

11. Running numbers always gives a reality check. All I see in #9 above, is there are so many unknowns and I could end up with nothing, except a huge bill for state and federal taxes. Know a good tax man????

Please let me know your proposal.

Penny

**Contract No. 2 In Which Ms. Brock Acknowledged Stimac Was Not Her Attorney.  State Bar of Oregon Found No Violations In Review Initiated By Stimac**

**EXHIBIT C**

You are so wrong! You are still the driving force! I cried today for you about what was done to you. I will keep praying for a miracle for you to be reinstated. The money settlement would be nice, but to have taken a part of who you are was the worst of it.

**Ms. Brock Displayed Sympathy For Effect DOJ-Brown Conspiracy Was Having On Stimac's Life Then Used It Against Him**

EXHIBIT D

Please call when you can. If the 12/12-12/13 hearing/"trial" goes forward, I don't know what that means for me "representing"
myself. This is a great case, but could it be lost by me representing myself? Judges don't like those who represent themselves
I have been told. Could Pagnano eat me alive? I don't know the format or what it means there will be a hearing one day and "trail...
the next.
Do I need to hire a Portland atty? It is only 1 1/2 weeks away and if need to bring someone on board, he needs to be briefed on
the case, etc.
This is easy for you, but I am clueless. Trying not to stress....but easier said than done.
Also, what is going on with Tom Fields? His last email was interesting. Glad he sent it to Karin Huffer for her input.
Thanks for the great job you are doing. Just wish you could be at the table in the courtroom, not only for my case; but for
other clients. Praying GOD will do a miracle for you.
Thanks,
Penny

Business:
What new documents?
what do you mean, don't worry.
Easy for you to say, don't worry, when I'll be the one Pagnano gives me the work over before the judge.
The only way I won't worry is if I know the hearing is cancelled, or if I know how the hearing/trial works.
I've never done it before or even know the process.
Clock is ticking and just days away from 12/12.
When can we talk, please???
Persoanl: don't think you know me as well as you say you do. Trust me, when I say I need to talk with you, i really, really do. The thought of the hearing is freaking me out.....seriously!!!!
Thanks!

**Ms. Brock Took Advantage Of
Stimac's Friendship For Help
Then Reported Him To King**

**EXHIBIT E**



*In Defense Of A Lady*

Lawyers And Judges In Service To The Patroness Of The United States

Phil Stimac
Executive Director
395 Greenstone Drive
Reno, NV 89512
PH. 775 742 4961
theeliteones.wordpress.com
stimacphil@hotmail.com

June 15, 2012

Penny Brock
9900 Wilbur May Parkway
# 5403
Reno, NV 89512

Re: Our Written Contract Dispute

Dear Penny:

I hope everything has been well with you and that you are making good progress with your Portland and Winnemucca lawsuits.

On April 23, 2012, you stated you would send me $1000 in May and were "blessed" to have me on your legal team. On April 27, you were still asking for my help in the Winnemucca case and on April 29 agreed to mail me $500.

In the past several weeks, I have done everything I can think of to find a way to sit down with you or your lawyer so we can listen to each other's concerns and try to come up with a solution which saves us both time and money.

**Stimac Never Stalked Or Harrassed Ms. Brock, But Tried To Help Her Avoid Litigation**

EXHIBIT F

Sometimes when friends get involved in business matters, there can be misunderstandings, feelings hurt and emotions run high. If they can't find a solution and have to resort to lawyers and court action, expenses and everything else gets cranked up a notch and can really get out of control.

Is there any chance you would be open to reviewing our agreements this weekend online, on the phone or through a brief business meeting?

I am a good listener and am willing to consider your side of the story and can provide you with a summary of everything I did in both cases. I still have some flex-ibility and am willing to work with you and your present situation.

I know you and Bill worked hard to build up your retirement, but you asked me to help you and I did every-thing required in a competent and professional manner. We have written contracts which you confirmed in writing and I conferred financial benefits on you which you would not have had except for my hard work and loyalty to you.

God Bless.

Very truly yours,

PHIL STIMAC